*640 TEXTO COMPLETO DE LA SENTENCIA
Consideramos dos recursos de certiorari presentados por distintas partes en el mismo pleito para revisar la resolución emitida el 7 de marzo de 2000 por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante ese dictamen se negó a desestimar las reclamaciones que contra los peticionarios presentaron los recurridos, Dr. Juan E. Grillo Alverio, Isis Morales Ramos y la Sociedad Legal de Gananciales compuesta por éstos. El recurso de certiorari KLCE-00-00351 fue presentado por los Dres. Migdalia E. Alvarado Burgos, Ernesto L. Ramírez López de Victoria, Ernesto Ramírez Torres, Jorge C. Muñoz Mattei, Juan R. Rosario Ramos, Adolfo Gierbolini Borrelli, Héctor Renta Meléndez, Roberto L. Mateo Nieves, Jorge L. Rivera Rosario, Eric D. Frontera Roura, Jaime Gierbolini Borrelli, Raúl Ortiz Escalera, Miguel E. Rivera Mateo y sus respectivas sociedades legales de gananciales ("dentistas-querellantes”). El recurso de certiorari KLCE-00-00350 fue presentado por los Dres. Amaldo Lasa Morales, Héctor Morales Fuentes, Roberto Pacheco Vázquez, sus respectivas esposas y sociedades legales de gananciales ("miembros del comité”).
Habiendo cumplido los recurridos en ambos recursos con nuestro requerimiento para que se expresaran sobre sus méritos, estamos en condiciones para adjudicarlos.
I
Se trata de un pleito instado por los recurridos contra el Colegio de Cirujanos Dentistas de Puerto Rico ("Colegio") y todos los dentistas peticionarios antes indicados, como Cirujanos Dentistas autorizados a ejercer la profesión en el Estado Libre Asociado de Puerto Rico, sus cónyuges y respectivas Sociedades Legal de Gananciales, que por desconocerse sus nombres, los cónyuges han sido denominado como A, E, N, X, Y, Z, M, C, P, R, B, H, K, L, G y J. Los dentistas-querellantes fueron los que formularon la querella instada contra el co-recurrido, Dr. Grillo, que más adelante se explicará, ante el Comité de Etica ("Comité") del Colegio cuyos integrantes son los Miembros del Comité peticionarios.
Excluidos los argumentos de derecho y las tesis que incluyeron en su texto, en la demanda que presentaron los recurridos esencialmente expusieron lo siguiente:
Los dentistas-querellantes tienen sus consultorios en los pueblos de Juana Díaz, Coamo y Santa Isabel y con motivo de que en diciembre de 1995 se implantó la reforma de salud gubernamental, conocida entre otras maneras como la Tarjeta de Salud de la Reforma ("la Reforma"), en estos Municipios, se reunieron en diferentes ocasiones y acordaron tomar acciones concertadas para obligar a la compañía aseguradora Cruz Azul de Puerto Rico, ("Cruz Azul"), entidad que había obtenido el contrato para administrar la Reforma en dichos Municipios, a que negociara mejores condiciones contractuales a favor de los referidos cirujanos dentistas, para la prestación de servicios dentales
Antes y después de comenzar la Reforma en los municipios de Juana Díaz, Coamo y Santa Isabel, el Colegio realizó negociaciones y actividades concertadas para negociar, fijar precios y obtener mejores condiciones de negocios frente a la compañía aseguradora Cruz Azul. En el comienzo de la Reforma, los dentistas-querellantes y el co-recurrido, Dr. Grillo, quien tiene abierto su consultorio en el Municipio de Ponce, tenían un contrato vigente con la Cruz Azul, bajo los términos y condiciones que esta entidad estableció, para ser proveedores de servicios dentales a todos los pacientes asegurados por la Cruz Azul, incluyendo los de la Reforma. Este contrato permite que el Dr. Grillo pueda brindar servicios a los pacientes de la Reforma de los municipios de Santa Isabel, Juana Díaz y Coamo.
Con el propósito de coaccionar a la Cruz Azul, los dentistas-querellantes organizaron un boicot a la prestación *641 de servicios de salud bajo la referida Reforma, en violación del contrato vigente y en detrimento de la salud de los indigentes de nuestro país. Publicaron, además, anuncios engañosos que inducían a error dirigidos al público general, alegando que "por factores ajenos a su voluntad", no podían honrar la tarjeta de la Reforma, y comparecieron a programas de radio para dar esa información contraria a la realidad, ya que la Reforma estaba en completo efecto y vigor en los referidos Municipios. En esos anuncios alegaron que eran todos los cirujanos dentistas que podían prestar servicios bajo la Reforma, siendo esto falso.
El boicot en contra de los pacientes de la Reforma resultó en un claro discrimen, marginación y perjuicio de los pacientes médico-indigentes, ya que los dentistas-querellantes continuaron atendiendo a los pacientes de mayores recursos económicos que tenían plan privado bajo el mismo contrato con la Cruz Azul. Los actos concertados para desinformar al público afectaron el comienzo y desarrollo de los servicios dentales bajo la Reforma, pues los paciente entendieron que ésta no incluia los servicios dentales, y los inhibió de visitar los consultorios de otros dentista que sí estaban brindando servicios, como el corecurrido, Dr Grillo.
Expusieron, además, que ante la confusión e información engañosa que estaban diseminando los dentistas-querellante de que la Reforma no estaba vigente, el Dr. Grillo decidió publicar una serie de anuncios en un periódico regional, rótulos y cruzacalles en los Municipios de Juana Díaz, Coamo, Santa Isabel y Viílalba, para notificar a todos sus pacientes que la Reforma estaba vigente y que la misma era aceptada en su consultorio. En vista de que las gestiones realizadas por el Dr. Grillo para informar a los pacientes de esos Municipios desmentía lo informado por los dentistas-querellantes y perjudicaba sus intereses, el 31 de enero de 1996, éstos presentaron una querella dirigida al co-peticionario, Dr. Roberto Pacheco Vázquez, Presidente de la Comisión de Etica del Colegio, alegando que dichos anuncios violaban varios cánones del Código de Etica de dicha Institución. Esta querella no le fue notificada al Dr. Grillo.
En ésta alegaron que el Dr. Grillo y otros dos dentistas trataron de aprovecharse de un atraso en el proceso de implementación de la Reforma en los pueblos de Coamo, Juana Díaz y Santa Isabel; que publicaron una serie de anuncios en un periódico local, dirigidos específicamente a los habitantes de esos Municipios, indicando que ellos sí aceptan "toda tarjeta de reforma de salud", mientras los dentistas de estos tres pueblos aún no estaban trabajando bajo la Reforma; que el Dr. Grillo y otros dos colocaron múltiples pancarta (cruzacalles) a las entradas de estos tres pueblos anunciando de igual forma que ellos sí podían atender los pacientes de la Reforma: que con esta estrategia el Dr. Grillo y los restantes dos convirtieron este asunto en una "casería de pacientes" a otros niveles, muy lejanos de las sendas de compañerismo y profesionalismo que debían compartir y violentaron, además, los artículos 15, 16 y 17 del Capítulo XIII del Código de Etica del Colegio.
En la demanda aseveraron, también, que de esa querella y de los hechos antes relacionados se desprende que con sus actuaciones los dentistas-querellantes tuvieron la intención de restringir irrazonablemente el comercio y la libre contratación de servicios dentales con el ánimo de monopolizar el mercado o parte de éste, o pequdicar o destruir la libre competencia en violación a las leyes antimonopolísticas y reprimir la libertad de expresión que ejerció el Dr. Grillo; que desde el 1993 y prácticamente todas las semanas, éste siempre se anunció y nunca se formuló querella por esta conducta, pero que no fue hasta que los anuncios mencionaron la Reforma, que los dentistas-querellantes presentaron la querella.
El 31 de diciembre de 1996, el Dr. Grillo se enteró de que se había presentado una queja en su contra, cuando fue notificado de la existencia de la misma por el Colegio, por conducto del co-peticionario y Presidente de la Comisión de Etica, Dr. Ramón A. Lasa. La notificación de la querella no incluyó copia de la querella y no fue hasta el 9 de enero de 1997 que el Dr. Grillo recibió copia de ésta con una carta de trámite, en la que se admitió el defecto en la notificación.
El 3 de marzo de 1997 se celebró la vista informal ante la Comisión de Etica que dispone el artículo IX, inciso 2, del Reglamento Interno de la Comisión de Etica del Colegio. A ésta asistieron el Dr. Grillo, su abogado y los miembros del comité peticionarios. Incomparecieron los dentistas-querellantes. En esta vista el Dr. Grillo formuló planteamientos de derecho similares a los que formuló en su demanda y que, en síntesis, niegan que el *642 Dr. Grillo violara los artículos 15, 16 y 17 del Código de Etica y cuestionan el trámite administrativo y el proceder del Colegio y de los peticionarios.
Escuchados estos argumentos, la Comisión determinó proseguir con los trámites de la querella por lo que el 7 de marzo de 1997, el Dr. Grillo contestó la misma, reiterando los planteamientos que expuso en la vista informal. Presentada una moción de desestimación, la Comisión acusó recibo de la Contestación a la Querella y de la Moción de Desestimación, e instruyó a los dentistas-querellantes a que reaccionaran por escrito al contenido de ambos documentos, en el término de quince días.
Los dentistas-querellantes nunca notificaron al Dr. Grillo su réplica a la Contestación a la Querella ni a Moción de Desestimación. La Comisión no resolvió esta última.
Sin embargo, a fines de septiembre de 1997 y sin que hubiera terminado el trámite formal del caso, la Comisión de Etica resolvió la querella en contra del Dr. Grillo en un documento que no contiene fecha y que no le fue notificado al abogado de éste. Resolvió que los cruzacalles exhibidos por el Dr. Grillo violentaban los artículos 15 y 19 de Código de Etica del Colegio sobre anuncios y notificaciones de disponibilidad de servicios y notificaciones en periódicos o diarios, respectivamente, ya que muestran una ilustración de una muela con un cepillo de dientes haciendo un gesto conocido popularmente como "guiñada”; no estaban ubicados en una oficina donde se presten servicios profesionales de odontología; hacían alusión a una empresa comercial ubicada en el pueblo de Ponce que no se relaciona con la odontología y en un pueblo al cual no se le había extendido a esa fecha la Reforma, y reflejan mal gusto y menosprecio a la profesión. Los cruzacalles llevan un mensaje erróneo de la profesión dental. Como consecuencia, se le prohibió al Dr. Grillo que volviera a incurrir en dicha conducta, apercibiéndole que de hacerlo, procederían a sancionarlo, de conformidad con el artículo 28 del Código de Etica.
En la demanda, los recurridos plantearon, también, que los artículos 15 y 19 del Código de Etica del Colegio son inconstitucionales de su faz o en su aplicación a los hechos de este caso, ya que violan el derecho del Dr. Grillo a la libre expresión garantizado por las constituciones de los Estados Unidos de América y del Estado Libre Asociado de Puerto Rico. Sostuvieron que, por esta razón, deben se anulados y eliminados del referido Código. Sostuvieron, además, que son ilegales de su faz o en su aplicación a los hechos de este caso, ya que restringen irrazonablemente la libre competencia y violentan las disposiciones de las leyes antimonopolísticas de los Estados Unidos y de Puerto Rico.
Aseveraron, además, que como esa Resolución de la Comisión de Etica estableció que si el Dr. Grillo volvía a anunciarse, podía ser castigado severamente, fue reprimido en su derecho a expresarse libremente, so pena de grave sanciones administrativas que podrían llegar al extremo de privarle del derecho a ejercer su profesión, conforme a lo dispuesto en el artículo 28 del Código; que con la represión de la libertad de expresión del Dr. Grillo, motivada por actuaciones violatorias de las leyes antimonopolísticas que le fueron claramente advertidas durante el proceso disciplinario, el Colegio se convirtió en instmmento, coautor y copartícipe de las actuaciones de los dentistas peticionarios, en clara violación de las referidas disposiciones antimonopolísticas.
Pertinente a los errores que ahora señalan, los recurridos aseveraron en su demanda que el propósito del Colegio y de los Miembros del Comité era restringir irrazonablemente el comercio y la libre competencia que se manifestó al tomarse en cuenta que antes y durante el tiempo que estaban notificando la querella en contra del Dr. Grillo, el Colegio estaba negociando y tratando de fijar precios ilegalmente con las compañías aseguradoras y los Miembros del Comité estaban anunciando sus servicios como lo hacía el Dr. Grillo; que el Colegio tenía conocimiento específico y previo de que no podía utilizar el Código de Etica para irrazonablemente restringir o impedir a sus miembros el solicitar negocios mediante anuncios veraces o métodos similares, y que esa actuación era ilegal, pues ello les fue advertido durante la vista informal celebrada.
Expusieron, finalmente, que en la Resolución dictada por la Comisión de Etica no se notificó al Dr. Grillo de su derecho a apelar la decisión, según dispone el artículo X del Reglamento Interno de la Comisión de Etica del Colegio de Cirujanos Dentistas de Puerto Rico; que los recurridos tienen fundadas razones para creer y temer que *643 la campaña represiva de los peticionarios continuará y se intensificará mientras el Dr. Grillo continúe en el legítimo ejercicio de su libertad de expresión, y que es inútil e innecesario exigir que se agoten los remedios apelativo reglamentarios dentro del Colegio, pues el proceso seguido contra el Dr. Grillo no respetó las disposiciones del debido proceso de ley o reglamentarias. Sostuvieron, asimismo, que las controversias giran en tomo a cuestiones de derecho fuera de la pericia del Colegio, el que carece de autoridad en ley para adjudicar y conceder remedios a los reclamos sustanciales de derechos constitucionales como la libertad de expresión, daños y perjuicios y las violaciones a las leyes antimonopolísticas que suscita el Dr. Grillo. Argumentaron que no atender judicialmente el reclamo de éste, les ocasionará daños irreparables, pues no tienen otro remedio en ley.
Solicitaron, pues, una compensación de $250,000.00 por los daños que les ocasionó la violación a la libertad de expresión; igual suma para compensar los daños mentales causados por los actos culposos y negligentes de los demandados; igual suma por haberle el Colegio violado el debido proceso de ley al Dr. Grillo; $750,000.00 (triple compensación) por los daños que les causó la violación de los artículos 2 y 4 de la Ley de Monopolios de Puerto Rico, Ley 77 del 25 de junio de 1964, ("Ley de Monopolios") 10 L.P.R.A. sees. 258 y 260, respectivamente, y la Ley Sherman 15 U.S.C.A. secs. 1 et. seq. Solicitaron, además, que el tribunal de instancia emitiera un injunction contra el Colegio para que se paralizaran y anularan todos los trámites disciplinarios seguidos por esa entidad contra el Dr. Grillo; que se eliminaran del Código de Etica de dicha institución las disposiciones que limitan irrazonablemente la libertad de expresión y la libre competencia y que lo dentistas puedan solicitar pacientes con anuncios veraces o métodos similares.
Así las cosas y mediante acuerdo entre las partes, el 18 de marzo de 1998, el tribunal de instancia emitió un injunction preliminar en los siguientes términos:

“a. Las partes demandadas se abstendrán y no podrán investigar, iniciar, promover, divulgar, facilitar, agravar, aplicar, poner en vigor, continuar o de cualquier forma ayudar en la tramitación de quejas, querellas, resoluciones, decretos, mociones, protestas, censuras, sanciones, procedimientos, cánones de ética, denuncias o cualquier tipo de trámite similar pasado, presente o futuro, que esté relacionado directa o indirectamente con el libre ejercicio de la libertad de su expresión privada, comercial o profesional o la libertad de comercio, empresa o ejercicio de la profesión de la parte demandante.

b. De la misma forma anterior y en cuanto a la parte demandante, los demandados no incurrirán en conducta que constituya una violación a las leyes o reglamentos antimonopolísticos de Puerto Rico y los Estados Unidos de América, según interpretadas por los tribunales y el Federal Trade Commission, tomando en cuenta el peso interpretativo que se le brinda a las decisiones de dicha agencia.

c. Lo anteriormente expresado no será óbice para que las partes demandadas puedan formular cualquier reconvención bajo legislación estatal o federal en el presente caso o en cualquier otro Tribunal o agencia con competencia por hechos no relacionados con las circunstancias antes expresadas.

d. El demandante se compromete a que al anunciar sus servicios profesionales cumplirá con lo dispuesto en el caso de Bates v. Arizona, 433 US 350 (1977), y a tono con los derechos que le asisten en la reglamentación antimonopolística y el ordenamiento vigente, como el demandante entiende que siempre lo ha hecho.

e. En caso de que otra persona no vinculada por esta Orden y que pueda ser identificada y confrontada en el debido trámite por el demandante, presente una queja o querella ante el Colegio de Cirujanos Dentistas relacionada con el libre ejercicio de la libertad de expresión privada, comercial o profesional o la libertad de comercio, empresa o ejercicio de la profesión del demandante, el Colegio de Cirujanos Dentistas no podrá tramitar la misma, conforme a lo expresado anteriormente, salvo que podrá, a su discreción, solicitar por escrito a este Tribunal un relevo o enmienda a esta Orden para poder intervenir en la queja o querella presentada. El demandante tendrá un término de veinte (20) días a partir del recibo de la solicitud de relevo para presentar los escritos que entienda procedentes en derecho. El Tribunal señalará una vista con premura para discutir la controversia y podrá enmendar esta Orden permitiendo la tramitación de la queja particular si entiende que de *644 probarse los hechos alegados en la queja, se establecería que el demandante incurrió en una conducta no protegida por el caso Arizona v. Bates, supra, la legislación antimonopolística o el ordenamiento vigente.

f Ninguna persona natural que haya participado directa o indirectamente en alguna etapa de los hechos alegados en la Demanda podrá participar directa o indirectamente en los trámites de la querella que el tribunal autorice.

g. La parte que prevalezca en el procedimiento de relevo antes mencionado tendrá derecho a solicitar las costas, gastos y honorarios de abogado según las Reglas de Procedimiento Civil.

h. Si el Tribunal enmienda esta Orden, conforme al procedimiento estipulado anteriormente, el que se permita la tramitación de una querella ante el Colegio de Cirujanos Dentistas no constituirá en forma alguna una adjudicación de los méritos de la misma.

i. Las partes estipulan que de tramitarse una nueva queja o querella ante la Comisión de Etica, no podrá utilizarse precedente, información, datos, expediente o resolución previa alguna como fundamento para agravar la penalidad o sanción que se imponga al demandante de entenderse probada una violación a los cánones de ética del Colegio de Cirujanos Dentistas. Esto incluye los apercibimientos hechos en la resolución emitida en el mes de septiembre de 1997, que se impugna en la Demanda.

j. Esta Orden no constituye una adjudicación en los méritos de las controversias pendientes. Tampoco puede interpretarse como una admisión de las partes demandadas sobre su responsabilidad o en cuanto a la veracidad de los hechos alegados. Tampoco constituye o puede interpretarse como una renuncia o limitación de los derechos reclamados por el demandante en la Demanda o en cualquier escrito posterior.

k. Esta Orden continuará en vigor durante la tramitación de este caso hasta que sea modificada, enmendada o sustituida mediante Sentencia a esos efectos.

l. Las partes han sido apercibidas de que cualquier violación a los términos de esta Orden podrá ser castigada como desacato al tribunal. ”

No obstante, el 23 de febrero de 1998, los peticionarios, en el recurso KLCE-00-00351 habían presentado una moción de desestimación de la demanda presentada en su contra Alegaron que los recurridos carecían de legitimación activa para instar la demanda debido a que no habían demostrado que hubiesen sufrido daños reales que afectaran la propiedad y negocios de los recurridos, como consecuencia de la violación de la Ley de Monopolios, ante, que le imputan a los peticionarios; que la presentación de una querella ante la Comisión de Etica del Colegio contra el Dr. Grillo, debido a los anuncios y la publicidad desplegada por éste nos constituyó un acto antijurídico del cual dimane responsabilidad civil al amparo del artículo 1802 del Código Civil de Puerto Rico, ante, sino que se trata de un acto legítimo, y que, como el Colegio posee facultad expresa por ley para adoptar e implantar los cánones de ética profesional que rigen la conducta de los dentistas de Puerto Rico y para recibir e investigar las quejas juradas que se formulen por la conducta de sus miembros, 20 L.P.R.A. sees. 111-113, al presentar la querella contra el Dr. Grillo, los peticionarios ejercieron el derecho que la Ley le confiere cuando estimen que se ha violado cualquier disposición legal o reglamentaria.
Por su parte, los peticionarios, en el recurso KLCE-00-00350, presentaron otra moción solicitando la desestimación de las reclamaciones en su contra. Alegaron que, como miembros de la Comisión de Etica del Colegio, tienen la facultad legal de investigar las querellas que se sometan en contra de un dentista por la violación de los cánones de ética o conducta ilegal o no profesional; que los recurridos no han agotado los remedios administrativos o dejado que la controversia madure; que la decisión que el Comité de Etica emitió no sancionó al Dr. Grillo, sino que lo apercibió de que podría sancionarlo de incurrir en la práctica por la cual se formuló la querella, porque la comisión estimó que el Dr. Grillo actuó bajo la creencia que su actuación era legal y protegida por la Constitución de Puerto Rico; que los recurridos no sufrieron daños debido a ello y que carecen *645 de legitimación activa para instar la acción.
Habiendo los recurridos presentado su oposición a las desestimaciones solicitadas, mediante la resolución recurrida y como antes indicamos, el tribunal de instancia denegó ambos pedidos. Concluyó que, consideradas las aseveraciones de la demanda de la forma más favorable a ellos, los recurridos habían expuestos hechos que, de demostrarse, podían justificar la concesión de un remedio al amparo de la Ley de Monopolios, ante, del artículo 1802 de Código Civil, ante, y de las Constituciones de los Estado Unidos y Puerto Rico, si demuestran la violación de su libertad de expresión, así como la restricción irrazonable al comercio y la libre contratación. No adjudicó planteamiento adicional alguno.
Inconformes, los peticionarios, en el recurso KLCE-00-00350 le imputan al tribunal de instancia haber errado: (1) al no haber determinado que la demanda presentada no cumple con los requisitos de ley para ser justiciable, y (2) al no determinar que no existe causa de acción a favor de los recurridos por haber atendido, adjudicado y orientado al Dr. Grillo en el ejercicio de un deber ministerial impuesto por Ley.
Por su parte, los peticionarios, en el recurso KLCE-00-00351 le imputan al mismo Foro haber errado: (1) al no determinar que los recurridos carecen de legitimación activa para instar una acción al amparo de la Ley de Monopolios, ante, y del artículo 1802 del Código Civil, ante, (2) por no haber determinado que los recurridos no tienen causa de acción contra los demandados por el hecho de haber presentado una querella ante el Colegio; y (3) al no desestimar por falta de jurisdicción sobre la materia la acción al amparo de la Ley Sherman.
Con el beneficio del alegato de los recurridos, estamos en condiciones de dictaminar.
II
Es norma reiterada que las alegaciones de las partes deben incluir aseveraciones sucintas y sencillas que no tienen que ser detalladas, siempre que notifiquen a grandes rasgos cual es la reclamación de la parte. Regla 6.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III; Banco Central v. Capitol Plaza, 135 D.P.R. 760 (1994); Mercado Cintrón v. Zeta Communications. 135 D.P.R. 737 (1994); Sierra v. Tribunal Superior, 81 D.P.R. 554, 568 (1959). Es importante que esa relación sea demostrativa de que el peticionario tiene derecho a un remedio. Regla 6.1, supra. Ello responde al principio de que a la parte demandante se le provee gran flexibilidad para que plantee sus reclamaciones, de forma tal que la parte demandada quede notificada de la naturaleza general de las contenciones en su contra y pueda comparecer a defenderse, si lo desea. Ortiz Díaz v. R.& R. Motor Sales Corp., 131 D.P.R. 829 (1992); Mercado Cintrón v. Zeta Communications, Inc., ante; Reyes Castillo v. Cantera Ramos, Inc., Op. del 24 de enero de 1996, 96 J.T.S. 9.
De otro lado, cuando una parte impugna una demand aduciendo que ésta no expone hechos que justifiquen la concesión de un remedio, el tribunal viene obligado a interpretar la demanda de forma conjunta, liberalmente y a favor del demandante, de manera tal que no pueda desestimarla a menos que concluya que el reclamante no tiene derecho a ningún remedio bajo cualesquiera hechos que pueda probar en juicio a base de los que ha expuesto en la demanda. Reyes Castillo v. Cantera Ramos, Inc., supra; Moa v. E.L.A., 100 D.P.R. 573 (1972). Debe considerarse si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991); Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991); González Camacho v. Santos Cruz, 124 D.P.R. 396 (1989); Candal v. C. T. Radiology Office Inc. 112 D.P.R. 227, 230-231 (1982); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 309-310 (1970); Colón v. San Patricio Corp., 81 D.P.R. 242, 266-267 (1959).
A esos efectos, es necesario dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Banco Central Corp. v. Capitol Plaza, Inc. 135 D.P.R. 760 (1994); Mercado Cintrón v. Zeta Communications, ante.
Para prevalecer, el promovente de la moción tiene que demostrar que, aún así, la demanda no expone una reclamación que justifique la concesión de un remedio, considerándose los hechos bien alegados y expresados de *646 manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994); Ramos Lazada v. Orientalist Rattan Furniture, 130 D.P.R. 712 (1992); Unisys v. Ramallo, ante; Romero Arroyo v. E.L.A., ante; Granados Navedo v. Rodríguez, 124 D.P.R. 1 (1989); Ramos v. Marrero, 116 D.P.R. 357, 369 (1985); First Federal Savings v. Asoc. de Condómines, 114 D.P.R. 426, 431-43 (1983).
Solamente si de la demanda se desprende con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación, debe desestimarse la demanda. Pressure Vessels P.R. v. Empire Gas P.R., supra; Unisys v. Ramallo, supra; Romero Arroyo v. E.L.A., supra; González Camacho v. Santos Cruz, ante; Granados Navedo v. Rodríguez, supra; Candal v. C. T. Radiology Office Inc., ante; Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 309-310 (1970); Colón v. San Patricio Corp., 81 D.P.R. 242, 266-267 (1959).
En casos en los que se alegan violaciones a las leyes antimonopolísticas, como el que nos ocupa, el criterio para determinar si la demanda debe desestimarse por no exponer una causa de acción que justifique la concesión de un remedio, es el mismo que en todos los demás casos. Pressure Vessels P.R. v. Empire Gas P.R., ante. La razón principal para ello es que en estos casos, la prueba está generalmente en las manos de los conspiradores. Id.
En este caso, los peticionarios no cumplieron con la obligación que le impone la normativa citada, por lo que el tribunal de instancia no tenía que acceder a su pedido de desestimación, considerados los hechos expuestos en la demanda presentada por los recurridos y el derecho sustantivo aplicable. Veamos.
III
A
Aunque utilizando un lenguaje aparentemente distinto, al discutir los errores, todos los peticionarios argumentan, en realidad y en síntesis, que la demanda no expone hecho que justifique la concesión de los remedios solicitados a amparo de la Ley de Monopolios. Los peticionarios, en el KLCE-00-00351, plantean que ésta requiere que el reclamante cumpla con lo dispuesto en el artículo 12 de la Ley, 10 L.P.R.A. see. 268; a saber, a) que la persona ha sido perjudicada en sus negocios o propiedades, y b) que haya sido perjudicada por actos o intentos de realizar actos prohibidos por la Ley, y que los recurridos no cumplieron con estos requisitos. Sostienen que, aunque hayan aseverado en su demanda que los dentistas-querellantes se reunieron en diferentes ocasiones y acordaron tomar acciones concertadas para obligar a la Cruz Azul a mejorar los términos y condiciones de sus contratos de reembolso, esos hechos no establecen una relación causal entre estos actos y los daños por los que los recurridos reclaman compensación. No estamos de acuerdo.
El artículo 12 de la Ley de Monopolios, 10 L.P.R.A. see. 268, autoriza, en lo pertinente, que "[cjualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales por las disposiciones de este capítulo, salvo las de las sees. 259 y 261 de este título, puede demandar a causa de dichos actos ante el Tribunal de Primera Instancia y tendrá derecho a recobrar tres (3) veces el importe de los daños y perjuicios que haya sufrido, más las costas del procedimiento y una suma razonable para honorarios de abogado." El término prescriptivo para instarla es de cuatro (4) años, a partir del nacimiento de la causa de acción.
El artículo 2 de la misma Ley, 10 L.P.R.A. see. 258, establece que para los efectos del estatuto, son actos para restringir el comercio ”[t]odo contrato, combinación en forma de trust o en otra forma, o conspiración para restringir irrazonablemente los negocios o el comercio en el Estado Libre Asociado de Puerto Rico o en cualquier sector de éste,...”, y por disposición del mismo artículo "se declaran ilegales", y delitos menos graves. En armonía con ello, para aplicar este capítulo debe presentarse prueba de que la empresa tenía una intención específica de monopolizar (controlando precios o destrayendo la competencia), ya sea unilateralmente o en combinación con otra (s); que incurrió en conducta anticompetitiva o predatoria dirigida hacia tal propósito, y que haya un mínimo de probabilidades de que dicha tentativa tenga éxito. Pressure Vessels P.R. v. Empire Gas P.R., ante. En fin, para configurar una causa de acción bajo este estatuto, el reclamante tiene que alegar y demostrar: *647 (1) que existe un contrato o concierto entre dos o más entidades separadas; (2) que restringe irrazonablemente los negocios o el comercio, y (3) que ello ocurra en Puerto Rico. Id.
El artículo 4, por otro lado, prohíbe la monopolización unilateral y la tentativa unilateral de monopolización así como la monopolización por combinación o conspiración. Los requisitos para esta causa de acción son la posesión del poder monopolístico en el mercado pertinente; esto es, el poder para controlar precios o excluir la competencia y la voluntaria adquisición o mantenimiento de dicho poder, distinto al crecimiento o desarrollo del negocio como consecuencia de un producto superior, mejores prácticas comerciales o de algún accidente histórico. Id., a la pág. 434.
Como puede apreciarse, pues, el artículo 2 de dicho estatuto prohíbe las restricciones irrazonables a los negocios o el comercio en Puerto Rico y el artículo 4 hace propio en cuanto a las prácticas monopolísticas.
Atendida la anterior normativa a la luz de aquella aplicable a las mociones de desestimación basadas en que no se han expuesto hechos que justifican la concesión de remedio, debemos concluir que, contrario a lo que sostienen todos los peticionarios, los recurridos expusieron de forma sucinta y adecuada en su demanda los hechos suficientes para informar que reclaman compensación al amparo de la Ley Monopolios, ante. Una simple lectura de la demanda así lo demuestra.
Las aseveraciones incluidas en la demanda le imputan a los dentistas-querellantes, a los Miembros de la Comisión y al Colegio una conspiración o acuerdo dirigido a hacerle daño y eliminar al recurrido como competidor. Aunque, ciertamente, deberán probar cada uno de esos extremos en su momento, los recurridos aseveraron específicamente que los dentistas-querellantes publicaron anuncios engañosos sobre los servicios dentales que se prestaban bajo la Reforma; que ante la acción del Dr. Grillo y los otros dentistas, presentaron una querella por violación ética con el fin y la intención de, en común acuerdo con los miembros del comité, restringir irrazonablemente el comercio, la libre contratación y reprimir la libre expresión del Dr. Grillo. Expusieron, además, que el Colegio se convirtió en instrumento y coautor de las actuaciones de los dentistas-querellantes; que el propósito de éstos y del Colegio era restringir irrazonablemente el comercio y la libre competencia y que el Colegio estaba negociando y tratando de fijar precios ilegalmente con las aseguradoras y los comisionados, como parte de una conspiración.
Por otro lado y contrario a lo que señalan todos los peticionarios, los recurridos no sólo reclaman compensación por los daños y sufrimientos morales que alegadamente han sufrido como consecuencia de tal conducta, sino que, también, reclamaron en la quinta causa de acción $250,000.00 por la pérdida económica y de ingresos que sufriera la sociedad de gananciales por todas las actuaciones ilegales e ilícitas descritas en la demanda. Como es conocido, el Dr. Grillo forma parte de esa Sociedad Legal de Gananciales. Ello así, el señalamiento de los peticionarios de que los recurridos no alegaron en la demanda daños reales y materiales causados directamente por la actuación ilegal imputada, es inmeritorio.
En conclusión, el tribunal de instancia no incidió al negarse a desestimar la reclamación de los recurridos al amparo de la Ley de Monopolios, ante.
B
En el recurso KLCE-00-00351 y con respecto al segundo error, los peticionarios señalan que el tribunal de instancia no consideró o adjudicó su planteamiento de que el hecho de que los dentistas presentaran una querella ante el Colegio no constituia un acto ilegal o antijurídico por el cual tuviesen que responder por daños y perjuicios, sino un acto legítimo y válido, pues el Colegio puede por ley imponer sanciones administrativas a miembros que violen su Reglamento o los cánones de ética.
Sostienen, además, que la presentación de una querella no puede causar daños y no constituye una restricción irrazonable al libre comercio de servicios dentales, pues trata de un acto en cumplimiento de una política pública claramente establecida por el Estado.
*648 Se nos plantea, además, que erró el foro de instancia al negarse a desestimar la causa de acción al amparo del artículo 1802 del Código Civil, ante, y de las Constituciones de los Estados Unidos y Puerto Rico. Aducen, en términos generales, que la presentación de querellas contra dentistas ante la Comisión y el Colegio es un ejercicio válido de la autoridad que se le ha delegado y que los miembros del Comité y el Colegio actuaron, conforme la misma. Sostienen, en fin, que no incurrieron en actos que justifiquen la concesión de un remedio.
El foro de instancia rechazó el planteamiento. Concluyó que la demanda sí expone hechos que, considerados de la forma más favorable a los recurridos, justificarían la concesión de remedios, si demuestran los actos monopolísticos, culposos e inconstitucionales que le imputan a los peticionarios. Estamos de acuerdo.
Como es conocido, al amparo del Artículo 1802 del Código Civil, ante, todo daño o perjuicio, moral o material, da lugar a la correspondiente reparación económica si concurren tres elementos o factores: 1) que se establezca la realidad de un daño sufrido; 2) que exista un nexo causal entre el daño y la acción u omisión de otra persona, y 3) que ese acto u omisión sea culposo o negligente. Bacó v. Almacén Ramón Rosa Delgado Inc., 2000 J.T.S. 122; Blas Toledo v. Hosp. Nuestra Señora de la Guadalupe, Op. del 30 de junio de 1998, 98 J.T.S. 111; Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994); J.A.D.M. v. Centro Comercial Plaza Carolina, 132 D.P.R. 785 (1993); Cotto v. C.M. Ins. Co., 116 D.P.R. 644 (1985); Hernández v. Fournier, 80 D.P.R. 93, 96-97 (1957).
El concepto de culpa, en particular, es indefinidamente amplio y abarcador e incluye cualquier transgresión humana que ocasione algún daño. Maldonado v. Banco Central Corp., 138 D.P.R. 268 (1995). Todo perjuicio, sea moral o material, da lugar a la reparación si se establece la realidad del daño sufrido y la relación causal entre dicho daño y una acción u omisión culposa o negligente de otra persona. Elba v. U.P.R., 125 D.P.R. 294 (1990). La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia. Artículo 1057 del Código Civil, 31 L.P.R.A. see. 3021. Fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse o que previstos fueran inevitables. Artículo 1058 del Código Civil, 31 L.P.R.A. see. 3022.
Finalmente, la culpa o negligencia en que descansa la responsabilidad del artículo 1802, ante, consiste, según el 1057, en dejar de ser diligente acorde a determinadas circunstancias y, conforme al artículo 1058 del Código Civil, 31 L.P.R.A. see. 3022, se responde de todo suceso que pudo preverse, pues el artículo 1802 gira inevitablemente en tomo a la función de previsión del individuo, como factor determinante de su responsabilidad con su congénere. Rivera v. Maryland Casualty Co., 96 D.P.R. 807, 810 (1968). El criterio de previsibilidad es la responsabilidad extracontractual. Véanse: Pacheco v. A.F.F., 112 D.P.R. 296 (1982); Dworkin v. SJ. Intercont. Hotel Corp., 91 D.P.R. 584 (1964); Patón Escabí v. Axtmayer, 90 D.P.R. 20 (1964); Weber v. Mejías, 85 D.P.R. 76 (1962).
En lo pertinente al asunto que nos ocupa, es inescapable la conclusión de que, a la luz de lo antes expuesto, la violación culposa o negligente del derecho a la libertad de palabra consagrado en la sección 4 del artículo II de la Constitución de Puerto Rico y en la Primera Enmienda de la Constitución de los Estados Unidos de América constituye un acto ilícito por los que un ciudadano puede reclamar compensación económica, si ello le causara daño previsible al reclamante, es decir, si demostrara la existencia del daño, que la privación del derecho constitucional fue negligente o culposo y que fue la causa próxima y adecuada de los daños por los que se reclama compensación.
Los derechos constitucionales, como por ejemplo el de la intimidad, operan ex proprio vigore y pueden hacerse valer entre personas privadas. Colón v. Romero Barceló, 112 D.P.R 573, 576 (1982); Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978); E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975); Alberio Quiñones v. E.L.A., 90 D.P.R. 812 (1964); González v. Ramírez Cuerda, 88 D.P.R. 125 (1963). Igualmente sucede con respecto al derecho constitucional que propugna la inviolabilidad de la dignidad del ser humano y aquél que protege a todo trabajador contra riesgo a su integridad personal en el trabajo. Arroyo v. Rattan Specialties, Inc. *649 117 D.P.R. 85 (1976). Al tenor de este principio, el pequdicado tiene el derecho a ser indemnizado por los perjuicios que le cause un ciudadano privado que interfiere con uno de estos derechos,.Colón v. Romero Barceló, supra, aunque la acción de daños no impide que la persona afectada salvaguarde y proteja su derecho mediante el uso del recurso de injunction. P.R. Tel. Co. v. Martínez, 114 D.P.R. 328 (1983); Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974).
Atendido todo ello, es inescapable la conclusión de que en adición a la utilización del recurso de injunction, los recurridos tienen derecho a instar una acción en daños y perjuicios al amparo del artículo 1802 del Código Civil, ante, para recobrar cualesquiera daños que se le hubiera ocasionado, como consecuencia de las actuaciones ilícitas que le imputan a los peticionarios tendentes a violarle su derecho constitucional a la libre expresión.
Sin embargo, por ser prematuro y para no rebasar el ámbito de adjudicación de la controversia ante nos, no debemos manifestamos sobre la inconstitucionalidad en su aplicación del Reglamento de Etica o sobre si el recurrente debió agotar los remedios administrativos. La abstención sobre pronunciamientos constitucionales es adecuado remedio cuando los mismos resultan académicos o en abstracto. Milán Rodríguez v. Muñoz, 110 D.P.R. 610, 618 (1981); P.I.P. v. E.L.A., 109 D.P.R. 685 (1980); Mari Bras v. Alcaide, 100 D.P.R. 506 (1972); Pueblo ex rel. M.G.G., 99 D.P.R. 925 (1971); Pueblo v. Marrero, 19 D.P.R. 649 (1956); Walker v. Tribl. Contribuciones y Tesorero, 72 D.P.R. 698 (1951); Spanish Am. Tobacco Co. v. Buscaglia, 71 D.P.R. 991 (1950).
Guiados por esta normativa, un examen de las aseveraciones expuestas en la demanda presentada ante el tribunal de instancia en el presente caso revela, sin lugar a dudas, que los hechos que describen la causa de acción por violación a la Ley de Monopolios también justificarían la concesión de remedio al amparo del artículo 1802 del Código Civil, ante. Las alegadas actuaciones ilícitas, conspiratorias o colusivas de los peticionarios dirigidas intencionalmente a impedir que el Dr. Grillo se expresara sobre la falsedad de lo alegadamente informado por los dentistas-querellantes y la alegada utilización de los procedimientos dentro del Colegio por los demás peticionarios para impedir el ejercicio de su profesión, constituirían una actuación culposa suficiente por sí sola para justificar la concesión de resarcimiento económico a los recurridos, si éstos probaran cada uno de los elementos.
No es difícil concluir que los hechos incluidos en la demanda revelan unas circunstancias de las cuales los peticionarios -como buenos padres de familia-, tenían que prever o anticipar que los recurridos sufrirían daños como consecuencia de los alegados actos conspiratorios contra el Dr. Grillo. Rivera v. Maryland Casualty Co., ante; Pacheco v. A.F.F., ante. De las circunstancias particulares descritas puede deducirse que esa actuación no podría catalogarse como un simple error de juicio, Gierbolini v. Employers Fire Ins. Co., ante, del que no dimana responsabilidad.
El error no fue cometido.
C
Mediante el tercer error, los peticionarios, en el recurso KLCE-00-00351 cuestionan que el tribunal de instancia ejerza jurisdicción sobre la materia atendida por la Ley Sherman. Tienen razón.
La sección 1 de la Ley Sherman, establece lo siguiente:

“Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal... ”.

Al igual que nuestra Ley de Monopolios, la Ley Sherman prohíbe los monopolios al prescribir que:

“[ejvery person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor,...

*650 La Ley Sherman fixe diseñada para preservar la libre competencia como la esencia del comercio. Descansa en la premisa de que la interacción irrestricta de las fuerzas competitivas redunda en una mejor distribución de los recursos económicos, en los precios más bajos, en la más alta calidad y en un gran desarrollo económico, al mismo tiempo que provee para que exista un ambiente que conduzca a la preservación de las instituciones democráticas, políticas y sociales de los Estados Unidos. Northern Pacific Railway Company v. United States of America, 356 U.S. 1, 4 (1958).
Esta Ley aplica cuando el esquema monopolístico o la actividad ilegal dirigida a restringir la competencia afecta el comercio interestatal entre los estados de los Estados Unidos. Las secciones 1 y 2 de la Ley Sherman disponen que es requisito esencial que el contrato o esquema en cuestión impida o afecte el comercio entre los distintos Estados.
Claro está, una actividad que en sí no ocurre dentro del comercio interestatal puede caer dentro del alcance de la Ley Sherman, si afecta sustancialmente el comercio interestatal. Burke v. Ford, 389 U.S. 320, 321 (1967). Más aún, el que no se tenga la intención de afectar el comercio interestatal es impertinente, pues los negocios puramente locales pueden producir los efectos repudiados por la Ley Sherman. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 743 (1974).
Al examinar la demanda instada, a la luz de las disposiciones y normativa expuestas, resulta evidente que en momento alguno los recurridos han consignado hechos que constituyan o puedan interpretarse como actos conspiratorios que afecten el comercio interestatal en forma alguna. Tampoco exponen hechos que demuestren que el acuerdo entre los peticionarios tuvo o pudo tener un efecto sustancial en el comercio interestatal o que de ocurrir le impondría una carga irrazonable al libre e ininterrumpido flujo del comercio interestatal. Ello así, la demanda deja de expone hechos que puedan configurar y justificar una causa de acción al amparo de la Ley Sherman.
No obstante, de rigor es consignar que si la demanda hubiese expuesto hechos suficiente para justificar una causa de acción al amparo de la Ley Sherman, el tribunal de instancia carecería de jurisdicción para dilucidarla, toda vez que dicha autoridad es exclusiva del Tribunal de Distrito de los Estados Unidos. 15 U.S.C.A. see. 4. Véase, además, Armstrong v. Taco Time Intern., Inc., Wash. App., 635 P. 2d. 1114 (1981); Vaughn & Co., Ltd. v. Saul, Ga App., 237 S.E. 2d. 622 (1977).
Nada de lo antes expuesto, impide que el foro apelado recurra a este estatuto a los fines de interpretar nuestra Ley de Monopolios, ante.
El error imputado se cometió y el tribunal de instancia debió desestimar la causa de acción al amparo de la Ley Sherman.
D
Como parte de la discusión del primer error, en el recurso KLCE-00-00350, los peticionarios sostienen que el tribunal de instancia debió atender y resolver su planteamiento en cuanto a que la controversia no es justiciable, debido a que no estaba madura para que el ese foro ejerciera su jurisdicción. En síntesis, plantean que el recurrido no ha agotado los remedios administrativos apelativos dispuestos en el Reglamento del Colegio. Sostienen que el Dr. Grillo tenía que acudir a la asamblea de verano del organismo para solicitar que se dejara sin efecto la sanción.
El tribunal de instancia no adjudicó este planteamiento, pero el que no lo hubiera hecho, no debe interpretarse como una negativa. Debido a ello, nos abstenemos de pronunciamos sobre el particular, hasta que ese Foro lo resuelva. Basta, en esta etapa de los procedimientos, consignar lo siguiente.
Las doctrinas de jurisdicción primaria y de agotamiento de remedios administrativos fueron adoptadas para mantener un adecuado balance y distribución de poder y tareas entre las agencias administrativas y el poder *651 judicial. Vélez Ramírez v. Romero Barceló, 122 D.P.R. 716 (1982).
En lo pertinente, la doctrina de agotar los remedios administrativos se refiere a la etapa de un procedimiento administrativo en que los tribunales deben intervenir para revisar la acción administrativa. Aguilú v. P.R. Parking Syptem, 122 D.P.R. 261 (1988). Requiere que el que desee obtener un remedio en una agencia utilice todas las vías administrativas disponibles antes de recurrir al tribunal. Colón Ventura v. Méndez, Depto. Recursos Naturales, 130 D.P.R. 433 (1992).
La doctrina establece que el foro judicial debe abstenerse de intervenir en una controversia proveniente de un organismo administrativo, hasta tanto haya culminado el trámite establecido en la agencia. Vélez Ramírez v. Romero Barceló, ante; Delgado Rodríguez v. Nazario Ferrer, 121 D.P.R. 347, 355 (1988); Febres v. Feijoó, 106 D.P.R. 676, 681 (1978). De ese modo se evita una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y el desenlace normal del procedimiento administrativo. Delgado Rodríguez v. Nazario Ferrer, supra. Esta doctrina responde a importantes consideraciones de política pública, como lo son el permitir que la agencia ejerza su discreción o aplique su conocimiento especializado, y el evitar el posible debilitamiento de la efectividad del foro administrativo, mediante la tramitación frecuente e indiscriminada en el foro judicial de asuntos que le atañen. Mercado Vega v. Universidad de Puerto Rico, 128 D.P.R. 273 (1991).
Sin embargo, la doctrina no es de aplicación inflexible. Existen circunstancias que justifican que un litigante pueda preterir el canal administrativo. Por ejemplo, no es necesario concluir los trámites administrativos provistos cuando: lo presentado es una cuestión de derecho que no requiere el ejercicio de discreción administrativa, hay una violación a los derechos civiles, el remedio administrativo es inútil e inadecuado, existe peligro de daño inminente o hay una clara ausencia de jurisdicción. A modo de excepción, en casos en que se alega violación de derechos civiles se puede obviar el proceso administrativo y acudir en primera instancia al foro judicial mediante el recurso de injunction, Delgado Rodríguez v. Nazario de Ferrer, ante, aunque no es suficiente una alegación general en ese sentido para marginar el proceso administrativo. El planteamiento debe ser claro y específico en cuanto a lo que constituye esa violación. Gracia Ortiz v. Policía de Puerto Rico, 96 J.T.S. 32.
La sección 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2173, también permite en casos extremos y como excepción que se agote el remedio administrativo disponible, pero solamente si el remedio administrativo resulta ser inadecuado, o si existe la posibilidad de un daño irreparable, si el balance de los intereses lo justifica, o cuando sea un asunto de estricto derecho, falta de jurisdicción o cuando existe una dilación excesiva en los procedimientos, entre otros. La misma reza de la siguiente manera:

“El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. ”

Por otro lado, como recurso legal extraordinario, el injunction sólo puede utilizarse cuando el procedimiento ordinario no provea un remedio rápido, adecuado y eficaz, para la corrección de un agravio de patente intensidad al derecho del individuo que reclame urgente reparación. Otero Martínez v. Gobernador, 106 D.P.R. 552 (1997). Por ello, para determinar si procede el injunction el tribunal tiene que detectar si la acción envuelve o no el agravio de patente intensidad al derecho del individuo que reclame urgente reparación. First Federal Savings v. Asociación de Condómines, 114 D.P.R. 426 (1983). Además, el tribunal deberá balancear los intereses involucrados y convencerse de que efectivamente existe una posibilidad real de prevalecer. Gracia Ortiz v. Policía de Puerto Rico, supra. Es la parte promovente del injunction quien deberá demostrar que de no concederse éste antes de adjudicarse el caso en sus méritos, sufriría un daño irreparable. Misión Industrial v. Junta de Planificación, 97 J.T.S. 34.
*652 Al tenor de lo antes expuestos se ha reconocido el acceso directo a los tribunales mediante el recurso de injunction autorizado en la Ley Núm. 12 de 8 de agosto de 1974, conocida como la Ley de Derechos Civiles, 32 L.P.R.A. 3524 et seq., cuando el procedimiento ordinario no provea un remedio adecuado, rápido y eficaz para la corrección de un agravio de patente intensidad al derecho del individuo que reclama urgente reparación. Otero Martínez v. Gobernador, 106 D.P.R. 552, 556 (1977). Esta Ley permite que se emita una orden de entredicho provisional, injunction, preliminar o permanente, ante alegaciones que de su faz substancien que se ha privado al reclamante de un derecho garantizado por la Constitución y las leyes de Puerto Rico o de Estados Unidos.
La misma lee, en lo pertinente, como sigue:

“Disponiéndose, sin embargo, que el tribunal podrá dictar dicha orden de entredicho provisional, injunction preliminar o permanente sujeto a los términos de la Regla 57 de Procedimiento Civil:

(2) Cuando en la petición se alegue que alguna persona, bajo la autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado de Puerto Rico, esté privando o sea el causante de que alguien esté privando al peticionario de algún derecho, privilegio o inmunidad protegido por la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o por la Constitución o las leyes de los Estados Unidos de América que sean aplicables a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto Rico. ”

Disponiéndose, además, que al dictar dicha orden el tribunal debe considerar el interés público envuelto y concluir que la parte peticionaria tiene una posibilidad real de prevalecer en los méritos de su petición. Dicha orden sólo tendrá vigor en el caso específico ante el tribunal y entre las partes.
De dicha disposición de ley, surge que procede que se dicte un injunction preliminar cuando el peticionario demuestre que se cumplen los criterios clásicos que gobiernan la expedición del mismo, a saber: que se le está privando por una ley, ordenanza o reglamento, de algún derecho, privilegio o inmunidad protegido por las leyes o la Constitución de Puerto Rico o la de Estados Unidos; que está expuesto a sufrir un daño irreparable por tal actuación; que tiene una posibilidad real de prevalecer en los méritos; y que se ha tomado en cuenta el impacto sobre el interés público envuelto. D. Rivé Rivera, Recursos Extraordinarios, Atlanta, Darby Printing Company, 1989, págs. 50 y 51.
El remedio provisto en dicha ley es independiente y suplementario a cualquier otro remedio disponible a la parte perjudicada. Pedraza Rivera v. Collazo Collazo, 108 D.P.R. 272, 276 (1979). La medida implica detectar si "la acción envuelve o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación". First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426, 438 (1983). El tribunal deberá balancear los intereses involucrados y convencerse de que efectivamente existe una posibilidad real de prevalecer. Santiago v. Superintendente de la Policía. 112 D.P.R. 205, 209 (1982).
En el presente caso, el tribunal de instancia debe determinar si están presentes los requisitos necesarios para que prevalezca la actual intervención judicial sobre el trámite administrativo. Ello es requisito indispensable para poder continuar el proceso judicial ya iniciado.
IV
Al discutir el segundo error formulado, en el recurso KLCE-00-00350, los peticionarios sostienen que los recurridos no tienen una causa de acción por el mero hecho de que hayan atendido una querella como miembros de la Comisión de Etica del Colegio.
Mediante la aprobación de la Ley Núm. 162 del 13 de mayo de 1941, 20 L.P.R.A. sec. Ill et seq., la Asamblea Legislativa constituyó a los profesionales con derecho a ejercer la cirugía dental en Puerto Rico en una entidad jurídica o corporación cuasi pública bajo el nombre de Colegio de Cirujanos Dentistas de Puerto Rico y con domicilio oficial en San Juan. Sección 1 de la Ley, 20 L.P.R.A. sec. 111. Quedó facultado, entre otras cosas, para demandar y ser demandado, como persona jurídica; nombrar y elegir sus directores y funcionarios u *653 oficiales, según estipule el Reglamento del Colegio y la ley que lo creó; adoptar y enmendar un reglamento obligatorio para todos los miembros en la forma y bajo los requisitos que en el mismo se estatuyan, previa audiencia en la que se dará al interesado oportunidad de ser oído, a imponer sanciones administrativas a los miembros de dicho Colegio que violaren las disposiciones de los reglamentos así adoptados mediante procedimientos que el reglamento dispondrá para seguirse en dicha audiencia; adoptar e implantar los cánones de ética profesional que regirán la conducta de los dentistas; recibir e investigar las quejas juradas que se formulen respecto a la conducta de los miembros en ejercicio de la profesión, pudiendo remitirlas a la Junta Directiva para que actúe, y después de una vista preliminar, en la que se dará oportunidad al interesado o su representante, si encontrara causa fundada instituir el correspondiente procedimiento de destitución ante la Junta Dental Examinadora. Sección 2 de la Ley, 20 L.P.R.A. see. 112. Ninguna persona que no sea miembro del Colegio podrá ejercer la profesión de cirugía dental en Puerto Rico, exceptuando unos casos identificados en la Ley.
Conforme la sección 6 de la Ley, 20 L.P.R.A. see. 115, los oficiales del Colegio serán miembros de la Junta Directiva y consistirán de un Presidente, un Vicepresidente primero, un Vicepresidente segundo, un Secretario, un Tesorero, un Auditor y un Vocal por cada sección o distrito estipulado en el reglamento, los cuales no serán nunca menos de cinco (5) y representarán las distintas áreas geográficas de Puerto Rico, siendo estos vocales los presidentes de sus respectivas secciones o distritos. La sección 8 del estatuto, 20 L.P.R.A. see. 118, dispone que el reglamento dispondrá lo que no se haya previsto en la Ley, incluyendo lo concerniente a funciones, deberes y procedimientos de todos sus organismos y oficiales; convocatorias, fechas, quorum, forma y requisitos de las asambleas generales y sesiones de la directiva; elecciones de directores y oficiales; comisiones permanentes, presupuestos o inversión de fondos y disposición de bienes del Colegio; y términos de todos los cargos, creación de vacantes y modo de cubrirlas.
Finalmente, el Colegio tendrá entre sus deberes y obligaciones elevar y mantener la dignidad de la profesión y sus miembros, así como sostener una saludable y estricta moral profesional entre los asociados.
Como puede apreciarse, el Colegio es una corporación semipública y sus miembros pueden ser demandados. No obstante, una demanda contra los miembros de la Comisión de Etica y el Colegio para responder al amparo del artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, por el ejercicio de la función adjudicativa en cumplimiento de su deber bajo ley, plantea una situación distinta. Veamos.
En Puerto Rico, los jueces poseen una inmunidad condicionada que no se extiende a actuaciones impropias, irracionales o corruptas, o a cualquier otra conducta expresamente prohibida por ley. Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991). El interés público exige que los jueces puedan descargar la función judicial sin temor a pleitos viciosos, pero se puede sostener una causa de acción contra éstos cuando la actuación judicial fue maliciosa o corrupta de tal magnitud que después que el acto malicioso por el cual se reclama, se haya conducido a una condena penal firme por constituir dicho acto un delito, o cuando tal acto haya redundado en la destitución del juez. Feliciano Rosado v. Matos Jr., 110 D.P.R. 550, 566 (1981). Así pues, el mero error de hecho o de detecho no puede ser motivo para que se invada el patrimonio de un juez en busca de reparación. Sólo procederá una causa de acción por daños y peijuicios contra un juez si los actos que sirven de fundamento para ejercer la acción han dado motivo para que el magistrado haya sido condenado penalmente por un acto delictivo o han redundado en la destitución del juez. Id., a la pág. 569.
Esta inmunidad parcial de los jueces contra demandas de este tipo ha sido extendida a todos aquellos que en nuestra sociedad ejercen la facultad de decidir controversias. Gallera de P.R.., Inc. v. Tribunal Superior, 103 D.P. R. 173, (1974).
Los que en nuestra sociedad ejercen la facultad de decidir controversias similar a la conferida a los jueces de derecho, han de sentirse libres de aprehensión en todo momento de que sus dictámenes y veredictos puedan provocar reacciones punitivas de las partes, o de sector alguno. Tan libre del temor a una acción de represalia contra su fallo han de sentirse un juez, como un árbitro, un comisionado especial, el umpire, el jurado en un certamen de ateneo; en fin, todo el que tiene la encomienda de decidir en cualquier competencia. Id, a la página *654 174.
A los jueces de nuestro sistema judicial se le ha reconocido una inmunidad que no es absoluta y por ello la de las personas que ejerzan funciones adjudicativas en una agencia pública o cuasipública, es igual. Esto quiere decir que en cuanto a estos últimos, el mero error de hecho o de derecho en el descargo de una función adjudicativa no puede ser motivo para sostener un caso de daños y perjuicios en contra. Feliciano Rosado v. Matos Jr., ante, a la página 558.
Para eso existen los recursos de revisión ante los tribunales de mayor jerarquía. Es a través de éstos que se reivindican derechos que han sido lesionados por las providencias de un juez que de buena fe percibió erráneamente los hechos o el derecho aplicable a determinado caso. Id., a la página 565.
En aras de proteger el interés social de un adecuado funcionamiento de los tribunales y las entidades adjudicativas, necesario es concluir que tener un punto vista o un criterio distinto en cuanto a la interpretación un estatuto o sobre la apreciación de los hechos durante los procedimientos judiciales o cuasijudiciales, no constituye la negligencia requerida para exigir responsabilidad civil extracontractual al amparo del artículo 1802 del Código Civil. Feliciano Rosado v. Matos Jr., supra, a la página 558. La adjudicación de una controversia genuina por un juez del tribunal o un funcionario de una agencia con poderes adjudicativos, jamás podrá considerarse como un acto negligente, por el hecho de que sea equivocada. Resolver lo contrario implicaría que un organismo adjudicativo sería responsable al amparo del artículo 1802, cuando las decisiones que emitan en cumplimiento de sus deberes, fuesen revocadas.
En el caso ante nos y para tratar de establecer su causa de acción contra los miembros de la Comisión de Etica, los recurridos aducen en su demanda que éstos incurrieron en un proceder ilícito y fraudulento al descargar su función adjudicativa. Alegan, en síntesis, que los peticionarios han conspirado para utilizar intencionalmente esa autoridad y responsabilidad para restringir la competencia y el comercio del Dr. Grillo, así como su derecho a la libre expresión sin particulizar los hechos en que se basa esta conclusión. Aunque, como antes hemos dicho, se permiten alegaciones sucintas y sencillas que no tienen que ser detalladas, lo aseverado en la demanda en cuanto a los miembros del Comité, sin embargo, no incluye un mínimo de hechos específicos que demuestren esas actuaciones intencionales e ilícitas. Lo expuesto es general, concluyente, vago e impreciso al respecto, al punto que se podría argumentar que la demanda debe ser desestimada. A pesar de ello, tal proceder no resultaría ser lo más juicioso, porque la misma es susceptible de ser enmendada al tenor de lo dispuesto en la Regla 10.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Figueroa v. Tribunal Superior, 88 D.P.R. 122 (1963).
A nuestro juicio, no basta que se hagan alegaciones concluyentes o especulativas. La demanda debe exponer hechos sucintos, pero suficientes que justifiquen la concesión del remedio solicitado. Banco Central Corp. v. Capital Plaza, Inc. 135 D.P.R. 760 (1994).
Por otro lado, cuando se alegan causas de acciones en materias técnicas debe incluirse una exposición mínima de la situación fáctica que las fundamentan o sea hechos del alegado proceder erróneo. Si ello no se hace, antes de desestimar debe dársele oportunidad de enmendarse la demanda, Pamel Corp. v. Puerto Rico Highway Authority, 621 F.2d 33 (1980), teniendo presente que al considerarse una moción de desestimación, al igual que para dictarse sentencia sumaria, hay que considerar sólo los hechos, pertinentes bien alegados. First Fed. Savs. v. Asoc de Condómines, 114 D.P.R. 426 (1983); Roldan Rosario v. Lutron S.M., Inc, 2000 J.T.S. 133.
Resumiendo, bajo ninguna circunstancia procede una demanda de conspiración o daños y perjuicios en contra de los miembros de una Comisión de Etica de una asociación profesional si ésta se fundamenta en el correcto ejercicio de sus funciones y adjudicación de querellas. Sólo podría proceder si las actuaciones fueran negligentes y ajenas a sus facultades y deberes, es decir, ultra vires o ilegales.
Debido a ello, una demanda contra estos profesionales tiene que contener una relación fáctica mínima que describa las actuaciones negligentes o conspiratorias en que se basa la reclamación. Si ello no se hace y no ejercen *655 la oportunidad que se le da para enmendar la demanda, será, entonces, forzoso desestimarla.
Finalmente y sin prejuzgar los méritos de las posiciones de las partes, es obligación de los abogados no presentar pleitos sin tener la prueba para sostenerlas y cerciorarse de las normas de derecho aplicables, máxime cuando se ataca la función de personas que actúan como jueces. Así, deben de cuidarse de toda presión o ánimo de sus clientes que conlleve la presentación de casos y escritos frívolos, en cuyo caso los tribunales de justicia deben ser firmes en la condena de honorarios de abogado por temeridad. Regla 44 de Procedimiento Civil, 32 L. P.R.A. Ap. m.
A la luz de todo lo expuesto, estimamos que en la circunstancias particulares que presenta esta causa, el tribunal de instancia actuó correctamente al negarse a desestimar la reclamación contra los miembros del Comité. No obstante, considerado el hecho de que a éstos se le reclama responsabilidad por una alegada actuación ilícita relacionada con el desempeño de sus funciones adjudicativas, el tribunal de instancia debió solicitarle a los recurridos que enmendaran su demanda y expusieran los hechos mínimos que a su juicio constituyen los actos conspíratenos a lo que hace referencia en su demanda y conforme la potestad que le confiere la Regla 10.5 de Procedimiento Civil, ante, aunque por tratarse de una moción de desestimación de la demanda a base de esas alegaciones, al considerar ciertas y liberalmente las aseveraciones, así como de la forma más favorable a los recurridos, hemos concurrido con el tribunal de instancia en cuanto a que no procedía su desestimación en esa etapa, pues los peticionarios no han demostrado que los recurridos no tendrían derecho a remedio alguno.
Las imputaciones generales contenidas en la demanda son serias y detrimentales a la función encomendada a los miembros del Comité que, mientras no se diluciden, afectan la imagen de éstos y la confianza pública en el descargo de esas funciones estatutarias. La independencia de criterio y la libertad de conciencia que deben tener sus miembros par resolver las quejas que se traigan ante su atención y la finalidad de su labor, constituyen razones de política pública sólidas que requieren que las imputaciones formulada por los recurridos se diluciden prontamente para permitir que los miembros puedan realizar su labor pública.
Es necesario que se determine con prontitud si los demandantes van a alegar y sostener que los miembros del Comité de Etica actuaron de forma ilícita y corrupta o si sólo cumplieron con su deber de adjudicar y emitir una decisión sobre una controversia genuina, cuya decisión podía ser revocada por un poder de mayor jerarquía.
Conforme lo expuesto aquí y bajo apercibimiento de desestimación, le ordenamos a los recurridos a que, dentro del término de diez (10) días de que esta sentencia se tome en final y firme, enmienden su demanda, exponiendo de forma más definida los hechos mínimos particulares que, a su juicio, constituyen la actuación ilícita y conspiratoria que le imputan a los miembros del Comité. Hecho esto, el tribunal de instancia deberá pautar el descubrimiento de prueba entre las partes del pleito para que en un tiempo razonable se adjudique si el Dr. Grillo debió agotar los remedios administrativos, y sobre todo, las serias imputaciones que han formulado los recurridos contra los miembros del Comité, a los fines de que los recurridos presenten la prueba para sustentar la conducta, la intención y el propósito ilícito que le atribuyen a éstos. Si no la tuviesen, deberá finalizarse este episodio de manera que los miembros del comité puedan continuar ejerciendo con tranquilidad y sosiego las facultades impuestas por la Ley.
Finalmente, no debemos rebasar el ámbito de adjudicación de la controversia ante nos, manifestándonos en esta etapa sobre la inconstitucionalidad en su aplicación del Reglamento de Etica que alegan los recurridos. La abstención sobre pronunciamientos constitucionales es adecuado remedio cuando los mismos resultan académicos o en abstracto. Milán Rodríguez v. Muñoz, 110 D.P.R. 610, 618 (1981); P.I.P. v. E.L.A., 109 D.P.R. 685 (1980); Mari Bras v. Alcaide, 100 D.P.R. 506 (1972); Pueblo ex reí. M.G.G., 99 D.P.R. 925 (1971); Pueblo v. Marrero, 19 D.P.R. 649 (1956); Walker v. Tribl. Contribuciones y Tesorero, 72 D.P.R. 698 (1951); Spanish Am. Tobacco Co. v. Buscaglia, 71 D.P.R. 991 (1950).
*656 Más aún, el tribunal de instancia no se ha manifestado sobre el particular todavía, por lo que el planteamiento es prematuro en esta etapa.
V
Evaluados los recursos presentados ante nos, resolvemos que el tribunal de instancia actuó correctamente al denegar la solicitud de desestimación de las reclamaciones al amparo de la Ley de Monopolios, ante, y del artículo 1802 del Código Civil, ante, y por la violación a sus derechos constitucionales, conforme el criterio de evaluación aplicable a una moción para desestimar; no así, al negarse a desestimar la causa de acción al amparo de la Ley Sherman.
No obstante, aunque las alegaciones de la demanda son suficientes para configurar, al menos, una causa de acción por responsabilidad civil extracontractual enmarcada bajo el abarcador molde y disciplina del artículo 1802, supra, o al amparo de la Ley de Monopolios, ante, la naturaleza de la reclamación contra los miembros del Comité, en particular, requiere que la demanda sea enmendada para incluir un mínimo de los hechos que constituyen la actuación alegadamente conspiratoria para utilizar esa autoridad y responsabilidad para restringir la competencia y el comercio del Dr. Grillo y el ejercicio de sus derechos constitucionales, bajo apercibimiento de desestimación, y de ella, alegarse bien y claramente que se realice descubrimiento de prueba sobre el particular y entonces se dilucide tal reclamación prontamente.
Por los fundamentos antes expuestos, se expide el auto para modificar el dictamen bajo estudio y desestimar la reclamación al amparo de la Ley Sherman y, así modificada, se confirma. Se devuelve el caso al foro de origen para que continúen los procedimientos de forma consistente con lo aquí dispuesto.
Lo decreta el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General